10-5005-cr
USA v. Yepez

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, at 500 Pearl Street, in the City of New York, on the 24th day of January, two thousand twelve.

Present: ROBERT A. KATZMANN,
GERARD E. LYNCH,
DENNY CHIN,
*Circuit Judges.*

_____

UNITED STATES OF AMERICA,

       *Appellee*,

       - v. -            No. 10-5005-cr

JESSE YEPEZ,

       *Defendant-Appellant*.

_____

| | |
|---|---|
| For Defendant-Appellant: | BENJAMIN E. ROSENBERG (Gordon Sung, *on the brief*), Dechert LLP, New York, N.Y. |
| For Appellee: | RICHARD BELLISS (Brenda K. Sannes, *on the brief*), Assistant United States Attorney, *of counsel*, *for*, Richard S. Hartunian, United States Attorney for the Northern District of New York, Syracuse, N.Y. |

Appeal from the United States District Court for the Northern District of New York (Mordue, *C.J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Jesse Yepez appeals from a judgment of conviction entered on December 9, 2010, in the United States District Court for the Northern District of New York (Mordue, *C.J.*). Following a three-day jury trial, Yepez was found guilty of two counts (Counts 1 and 2) of possessing and receiving a firearm while being an unlawful user of a controlled substance, in violation of 18 U.S.C. § 922(g)(3); one count (Count 4) of possessing a stolen firearm, knowing it to have been stolen, in violation of 18 U.S.C. § 922(j); two counts (Counts 5 and 6) of transferring a firearm knowing that it would be used to commit a narcotics conspiracy, in violation of 18 U.S.C. § 924(h); and two counts (Counts 7 and 8) of conspiracy to distribute a controlled substance (cocaine and marijuana, respectively). The district court principally sentenced Yepez to 46 months' imprisonment. On appeal, Yepez contends that there was insufficient evidence to convict him of Counts 1, 2, 5, 6, 7, and 8. Specifically, he argues that there was insufficient evidence for the jury to conclude that (1) he was "an unlawful user" of marijuana while he possessed firearms (Counts 1 and 2), (2) he transferred firearms knowing that they would be used to commit a marijuana trafficking conspiracy (Counts 5 and 6), and (3) he conspired with anyone to distribute either cocaine (Count 7) or marijuana (Count 8). He does not challenge his conviction on Count 4. We assume the parties' familiarity with the facts and procedural history of the case.

A defendant challenging the sufficiency of the evidence bears a "heavy burden." *United States v. Gaskin*, 364 F.3d 438, 459 (2d Cir. 2004) (internal quotation marks omitted). We

review the evidence "in the light most favorable to the government, crediting every inference that could have been drawn in the government's favor." *United States v. Chavez*, 549 F.3d 119, 124 (2d Cir. 2008). A conviction must be affirmed if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

We first turn to whether there was sufficient evidence to support Counts 1 and 2. It is unlawful for any person "who is an unlawful user of or addicted to any controlled substance" to "possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g)(3). Yepez argues that there was insufficient evidence for the jury to find that he was an unlawful user of marijuana at the time he possessed the black Heckler and Koch P2000 .40 caliber handgun (the "H&K Handgun") and the silver Star Interarms "Firestar" 9mm handgun (the "Star Handgun"). For the jury to convict Yepez of these counts, there must have been evidence from which a reasonable jury could conclude that Yepez "engaged in a pattern of use of controlled substances that reasonably covers the time of the events charged in the [superseding] indictment." 2 Leonard B. Sand et al., *Modern Federal Jury Instructions–Criminal*, Instruction 35-48.1 (2011). *See also United States v. Nevarez*, 251 F.3d 28 (2d Cir. 2001) (per curiam) ("[A] defendant's unlawful use of a controlled substance must be ongoing and contemporaneous with the commission of the offense.").

Drawing all inferences in the government's favor, we conclude that there was sufficient evidence to establish that Yepez regularly used marijuana during the time period he possessed the two guns. In particular, two of Yepez's trusted friends testified that Yepez frequently

3

smoked marijuana during the 2006-2007 time frame. Jason Page testified that Yepez "smoked a lot" of marijuana during this time period, and Chris Davila testified that Yepez "loved smoking weed." J.A. 41, 248. These witnesses also testified that during the 2006-2007 time frame they observed Yepez smoking marijuana in various locations, including in Page's apartment, in the car, during road trips, and at Shenanigan's, the bar where Yepez worked. Accordingly, a reasonable jury could conclude that Yepez was an unlawful user of marijuana when he possessed the H&K Handgun and the Star Handgun.

We next turn to whether there was sufficient evidence to support Counts 5 and 6. It is unlawful for any person to "knowingly transfer[] a firearm, knowing that such firearm will be used to commit a . . . drug trafficking crime." 18 U.S.C. § 924(h). Here, the drug trafficking crime specified in the superseding indictment is Page's conspiracy to distribute marijuana. Yepez argues that there was insufficient evidence to establish that Yepez knew that the H&K Handgun and the Star Handgun that he sold to Page would be used to commit a marijuana conspiracy, as opposed to a substantive crime of marijuana distribution. We disagree.

After reviewing the trial record, we conclude that there was ample evidence from which a jury could infer that Yepez transferred firearms knowing they would be used to commit a narcotics conspiracy. Page testified that he was an "organizer" in a conspiracy that involved the trafficking of marijuana and that once Page and Yepez became friends, they discussed the trafficking of marijuana as well as Page's concerns for his safety given the dangers present in marijuana trafficking. They also discussed how bullet proof vests and firearms could be used to protect Page, and Page subsequently purchased two firearms and three bulletproof vests at a discount from Yepez. Based upon this evidence, a jury could reasonably infer that Yepez

4

transferred firearms to Page knowing that they would be used to commit a marijuana conspiracy.

We finally turn to whether there was sufficient evidence to find that Yepez participated in a cocaine conspiracy (Count 7) and a marijuana conspiracy (Count 8). Where, as here, a defendant challenges a conspiracy conviction, "deference to the jury's findings is especially important . . . because a conspiracy by its very nature is a secretive operation, and it is a rare case where all aspects of a conspiracy can be laid bare in court with the precision of a surgeon's scalpel." *United States v. Santos*, 541 F.3d 63, 70 (2d Cir. 2008) (internal quotation marks omitted). "The record must nonetheless permit a rational jury to find: (1) the existence of the conspiracy charged; (2) that the defendant had knowledge of the conspiracy; and (3) that the defendant intentionally joined the conspiracy." *Id.* (internal citations omitted).

We conclude that there was sufficient evidence to support both conspiracies. As to the cocaine conspiracy, in addition to expressing interest in Davila's cocaine business, Yepez purchased cocaine from Davila on eight to ten occasions and sold some of this cocaine at Shenanigan's. Davila also allowed Yepez to stay in the "stash house" where Davila stored cocaine, something the jury could infer would be permitted only for a trusted member of the conspiracy. Moreover, at Davila's request, Yepez removed the Star Handgun from the stash house to hide it from investigators, an action from which the jury could infer his intent to further the goals of the conspiracy. As to the marijuana conspiracy, Page testified that he sold one pound of marijuana to Yepez on credit, expecting Yepez to resell the marijuana in order to pay Page back. The jury could also infer a "level of mutual trust" between Page and Yepez, *see United States v. Hawkins*, 547 F.3d 66, 74 (2d Cir. 2008), from, among other things, the fact that

5

Page sometimes brought Yepez along for marijuana pickups and deliveries. Moreover, as noted above, Yepez also sold or gave Page the two handguns and three bulletproof vests. Based upon this evidence, a reasonable jury could conclude that Yepez knowingly participated in both the marijuana conspiracy and the cocaine conspiracy.

We have considered all of Defendant-Appellant's remaining arguments and find them to be without merit. For the reasons stated above, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK